[No. 20413.  In Bank. — March 7, 1889.]

## THE PEOPLE, RESPONDENT, v. CALVIN PRATT, APPELLANT.

CRIMINAL LAW — APPEAL — BILL OF EXCEPTIONS — PROOF IN SUPREME COURT. — When nearly two years are allowed to elapse after presentation of a bill of exceptions and proposed amendments to the judge of the court below for allowance and settlement, and another voluminous bill of exceptions is meanwhile settled and allowed, a statement by the judge on a subsequent application for the settlement of the first bill, that he knew nothing of it, and that it was not in his possession, does not show such a refusal to settle the bill as brings the matter within section 1174 of the Penal Code, providing for proof of exceptions in the supreme court.

CRIMINAL LAW — ILLEGAL EXTRADITION OF FUGITIVE — JURISDICTION. — The question whether the act of the governor of the state was illegal in procuring the return of a fugitive from justice from a foreign government with which the United States have no extradition treaty, cannot affect the jurisdiction of a court of this state to try the prisoner for an offense committed within its jurisdiction.  The jurisdiction of the court is not impaired by the manner in which the accused is brought before it.  The people of a state are not bound by any illegal act of the governor.

JURY — NEW TRIAL — AFFIDAVITS OF JURORS. — The affidavits of the jurors are not admissible to impeach their verdict on a motion for a new trial.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Henry E. Highton,* for Appellant, cited U. S. Const., art. 2, sec. 10; Story on Const. Laws, 8th ed., 848; *Scott v. Jones,* 5 How. 343; *In re Kaine,* 14 How. 103; *People v. Rowe,* 4 Park. Cr. 253; *State of Iowa v. Ross,* 21 Iowa, 471; *Dow's Case,* 18 Pa. St. 37; *Ker v. Illinois,* 110 Ill. 630; 51 Am. Rep. 706; 119 U. S. 473; *In re Mahon,* 34 Fed. Rep. 525; *United States v. Rauscher,* 119 U. S. 407; *Holmes v. Jenison,* 14 Pet. 571–574; *People v. Curtis,* 50 N. Y. 321; 10 Am. Rep. 483; Spear on Extradition, pp. 19, 24, 96, 102, 115, 117, 122, 518, 519; *Ex parte Holmes,* 12 Vt. 640; *Head Money Cases,* 112 U. S. 598, 599; *Chew Hong v. United States,* 112 U. S. 536, 540, 561; *Robb v. Connolly,* 111 U. S. 637; *Ex parte Royall,* 117 U. S. 249, 252; *Commonwealth v. Hawes,* 13 Bush, 702; 26 Am. Rep. 242; *Foster v. Neilson,* 2 Pet. 314.

*Attorney-General Johnson,* and *J. A. Hosmer,* for Respondent, cited *Ker v. Illinois,* 119 U. S. 440, 442; *Mahon v. Justice,* 127 U. S. 714; *Ex parte Ah Men,* 77 Cal. 198; *Ex parte Scott,* 9 Barn. & C. 446; *State v. Brewster,* 7 Vt. 118; *Dow's Case,* 18 Pa. St. 37; *State v. Ross,* 21 Iowa, 467; *State v. Smith,* 1 Bail. 283; 19 Am. Dec. 679; *People v. Gray,* 61 Cal. 183; 44 Am. Rep. 549; *Clark v. His Creditors,* 57 Cal. 639; *People v. Sprague,* 53 Cal. 493; *Polhemus v. Heiman,* 50 Cal. 441; *People v. Doyell,* 48 Cal. 90; *Boyce v. California Stage Co.,* 25 Cal. 475; *People v. Wyman,* 15 Cal. 75; *People v. Hughes,* 29 Cal. 262; *Castro v. Gill,* 5 Cal. 42; *People v. Baker,* 1 Cal. 405.

FOOTE, C.—The defendant was convicted of the crime of forgery, and has appealed from the judgment rendered, and from an order denying his motion for a new trial.

After the cause had reached this court upon appeal, the defendant filed a petition, under section 1174 of the Penal Code, to have certain bills of exception settled, which he claimed had been refused to be allowed by the judge of the court below.

It appears that the bills were prepared, amendments proposed, and they were then left with the judge for allowance or settlement. No further attention seems to have been paid to the matter for some time, nearly two years having elapsed since the bills were placed in the hands of the judge, another voluminous bill of exceptions having meanwhile been settled and allowed, which is in the transcript here, but contains none of the exceptions now prayed to be allowed. On the 14th of July, 1888, for the first time (the case being then here on appeal), application was made to the trial judge to settle and allow the first bills, when he stated that he knew nothing of them, and that they were not in his possession.

Passing the question as to whether the proceedings instituted by the defendant, as to proper notice to the parties concerned, are in accordance with the rules usual in the appellate court as to such a matter, it is evident that the defendant has not shown such a refusal on the part of the judge below to settle and allow the bills as brings the matter within the section of the Penal Code, *supra.* His petition should therefore be denied.

Conceding, without deciding, that the special plea to the jurisdiction of the court can be considered now, as also the action of that tribunal in overruling and in refusing to hear evidence to establish it, it appears to us that the court was not in error.

The facts set up in the plea, and the evidence offered, are to the effect that the defendant was living in Japan, as he was entitled to do, as a citizen of the United States, under a treaty existing between these two governments, when "without any charges having been entered against him, or any legal examination had as is provided by the laws of Japan or the laws of the United States, he was by force of arms, and against his will, brought thence into the city and county of San Francisco, in this state, where he has since been by force of arms detained, and so continues to be."

"The defendant was not demanded of the Japanese government by the United States government, nor surrendered by the Japanese government to the United States government. On the contrary, the United States government, on being asked by the governor of the state of California to request the Japanese government to deliver up the defendant on the charge set forth in said information, expressly declined to make any request whatever of the Japanese government for the surrender of the defendant, stating in its refusal that the practice of the United States had been and was to refuse to ask or accept the surrender of a fugitive from the United States from any foreign country with which they did not have an extradition treaty."

It is then charged that the governor of California, with knowledge of such refusal, and acting as such governor, made a formal request on the Japanese government for the delivery up of the defendant to a police officer of the city and county of San Francisco, that solely in compliance with that request the defendant was against his will forcibly delivered to the police officer, and was brought by him to said city and county.

The defendant protested against all these acts, contending that as a citizen of the United States he had a right to reside where he then was under its treaty with Japan. He also objected because, as he alleged, the governor of California, in his action, had violated the constitution of the United States in making the request which he did of the Japanese government.

The governor of California could not make any treaty with Japan, and seems merely to have made a request that a party charged with a criminal offense, of which the courts of the state had jurisdiction, might be delivered to a police officer of San Francisco, and returned, to be tried for his alleged crime, to the state whose laws he was asserted to have violated.

If, as the defendant claims, the governor had no legal

right, as such, to demand and obtain his return to California, then it would seem that he was returned by means of illegal force used by that officer and his assistants, and through the wish of the Japanese government, to oblige the governor, as being the executive officer of one of the United States. While this might be said in a certain sense to be a violation of the defendant's personal right, and a kidnaping, so to speak, so far as the governor's action is concerned, it does not appear that the Japanese government has complained in any way of his act. The matter then resolves itself into this: that as between the governor and the defendant, the latter has suffered a deprivation of personal liberty in a case where the governor had no legal power to act. The defendant being·before the proper court, which had jurisdiction of his offense, it matters not how he may have entered into the presence of the court, it was its duty to try him.

"The jurisdiction of the court in which the individual is found is not impaired by the manner in which the accused is brought before it." (*Mahon* v. *Justice,* 127 U. S. 708, and cases cited.)

"It would indeed be a strange conclusion if a party charged with a criminal offense could be excused from answering the government whose laws he had violated, because other parties had done violence to him, and also committed an offense against the laws of another state." (*Mahon* v. *Justice,* 127 U. S. 712; *Ex parte Ah Men,* 77 Cal. 198.)

The governor of the state cannot oust the courts of the commonwealth of their right to try an individual charged with an offense over which they have jurisdiction, because of the fact that he has been instrumental in having the defendant there, by violation of his personal rights. It will not do to say that a fugitive from justice can escape the punishment for his crime because the governor of a state may have violated some law.

The people of a state are not bound by any illegal act of their governor, nor should they be.

The argument of the defendant, to the effect that the state is bound in law and good morals to have this defendant released, and that her courts should so hold, strikes us as being without force. The governor, evidently actuated by the motive that one charged with a high crime should have meted out to him just punishment, may have taken steps to bring him before the bar of a court of justice having jurisdiction of his offense which are not warranted by law, but that is a matter personal to the governor, with which neither the commonwealth nor the courts have any concern.

This is not the case of a defendant who has been extradited for an offense under a treaty existing between the United States government and some foreign power, where it is attempted to try him for some other offense for which he has not been extradited.

The affidavits of the jurors which were procured to be taken by the defendant for use on his motion to obtain a new trial are not entitled to any consideration, as they went to the impeachment of their verdict. (*People v. Gray*, 61 Cal. 183; 44 Am. Rep. 549.)

On the whole case, presented as it has been upon both sides fully and ably, we perceive no prejudicial error, and advise that the judgment and order be affirmed.

BELCHER, C. C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.