### KIRBY *v.* WOOTEN, ADMINISTRATOR.

Opinion delivered February 18, 1918.

APPEAL AND ERROR—DIRECTED VERDICT—HOW TESTED.—On appeal from a directed verdict, the evidence must be given its strongest probative value in favor of the party against whom the verdict is directed, and if there is any evidence tending to establish an issue in his favor, the court should allow the issue to go to the jury.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; reversed.

*Moore, Vineyard & Satterfield,* for appellant.

1. It was error to direct a verdict. The Maynard estate was indebted to Kirby in some amount, and the matter should have been submitted to a jury. 120 Ark. 206. See also 103 Ark. 401; 101 *Id.* 22; 96 *Id.* 394; 147 S. W. 93; 140 *Id.* 996; 131 *Id.* 947.

*D. S. Plummer* and *Daggett & Daggett,* for appellees.

1. Kirby's testimony was inadmissible, and there was no testimony to prove Kirby's claim. There was nothing to submit to a jury, and a verdict was properly directed.

2. There is evidence sufficient to show that March 2, 1916, there was a settlement to date and a balance struck. A new contract was made and there was a stated account between the parties. The books of Maynard show a balance due of $359.07, and the court was correct in instructing a verdict. It was also shown that a settlement was had after Maynard's death, and there was

due $410.55 under the note.   The findings of the chancellor are supported by the evidence.

### STATEMENT OF FACTS.

For several years prior to March, 1916, H. C. Maynard was a merchant at Rondo, Lee County, Arkansas. For two or three years the appellant had been trading with Maynard, and on the 2d of March, 1916, appellant executed a deed of trust to secure a balance of $359.70 for past indebtedness due Maynard, and also for supplies to be furnished to make the crop for the year 1916.   Kirby executed a note in the sum of $500.   The deed of trust embraced certain personal property.   A short time after the deed of trust was executed Maynard died intestate and T. C. Wooten was appointed his administrator.

On the 24th of April, 1916, a contract was entered into between the administrator and Kirby and one T. L. Shapard, by which Kirby released the administrator from carrying out Maynard's contract to furnish supplies, and by which Shapard, for the consideration mentioned, undertook to furnish supplies.   In this contract Kirby admitted that he was indebted to Maynard's estate in the sum of $410.55, and agreed that the mortgage executed by him on the 2d of March, 1916, should remain in full force and effect.   The note secured by the deed of trust was endorsed to show the amount due thereon.

On the second day of November, 1916, Kirby tendered to the administrator of Maynard's estate the sum of $121.90, and presented to him an account against the estate, claiming that the estate was indebted to him in the sum of $288.10, and requested the administrator to satisfy the mortgage and cancel the note.   The administrator refused to do this, and on the 8th of November appellant instituted suit for the possession of the property described in the deed of trust, and on the same day filed his claim against the Maynard estate in the probate court of Lee County, verified as required by law.

On December 11, 1916, the claim was disallowed by the probate court, and an appeal was taken to the circuit

court. In the circuit court the causes were consolidated by agreement, and the issues were sent to a jury.

Kirby testified, admitting the execution of the note and mortgage, and stated that Wilse Wooten was the only one present besides himself and Maynard when the mortgage was executed; that Wooten was the notary public who took his acknowledgment. He stated that at the time the mortgage was executed he claimed the amount that was due him, the amount of the account which he afterwards presented against Maynard's estate, and Maynard told him it could be settled later. He then proceeds to testify as to the correctness of the various items of the account. He stated that he was not given credit for the work done for and the property furnished to Maynard; that it was mentioned at the time. He had paid the balance on the note, less these items of credit, except the sum of fifty-five cents, which he admitted was still due on the note. He did not get credit on the second of March, when he executed the note and mortgage to Maynard, but Maynard told him that he would give him credit later.

The testimony of Kirby concerning the items of his account and the transactions had with Maynard was objected to by the attorney representing the administrator of Maynard's estate.

Witness Wooten testified that he was present and heard part of the conversation between Maynard and Kirby at the time the mortgage was executed and heard Maynard tell Kirby that he would give him the credits later on in the fall in settlement for what was owing to him; told Kirby to make up a list of what he, Maynard, owed him and that he would give him credit later on.

One witness testified that in the year 1915 Maynard got some hay from Kirby. Another witness testified that Maynard got a black mule from Kirby in 1915, that Kirby lent Maynard the mule and the mule died while in Maynard's possession. The testimony showed that the mule was worth $100.

T. C. Wooten testified that he was administrator of the estate of Maynard; that he took possession of May-

nard's books, and the books showed a balance of $359.70 due from Kirby to Maynard. He exhibited the contract already referred to between himself, Kirby and Shapard. He had no conversation with Kirby before the contract was drawn up with reference to credits. The credits were not mentioned until about a month afterwards. Kirby paid witness, on November 2, 1916, $121.90. Kirby did not owe the full amount of $500; he had not taken up the full amount of the $500 when Maynard died, and the sum of $200 was released. The note bears this endorsement: "Balance due on this note under contract between W. F. Kirby, T. L. Shapard and T. C. Wooten, administrator, dated April 24, 1916, $410.55."

Kirby testified, in rebuttal, that he had paid to the administrator, the difference between the amount of his claim against the estate of Maynard and the amount due by him to the Maynard estate, but the administrator had not released the papers.

The court gave certain instructions and the record recites the following:

"Thereupon, while the case was being argued to the jury, and at a time when Mr. Daggett, of counsel for plaintiff, was making the closing argument to the jury, the court requested that such argument be suspended, and thereupon gave to the jury the following instruction, to-wit: 'Gentlemen of the jury, under the law and the evidence in this case you will return a verdict for the administrator for the value of the property described in the complaint.' Thereupon, W. R. Satterfield, counsel for W. F. Kirby, objected to the giving of such peremptory instruction, which objection was by the court overruled, to which ruling and action of the court counsel for Kirby duly excepted." The court further instructed the jury, over the objection of appellant's counsel, that the defendant's claim "will be disallowed." The court then excluded from the jury all the testimony of W. F. Kirby regarding any statements or transactions with the deceased, H. C. Maynard, regarding the items mentioned in the account of W. F. Kirby, and thereupon instructed the

jury, peremptorily, under the law and the evidence of the case, to return a verdict for the plaintiff for the possession of the property described in the complaint, and to disallow the claim of the defendant, W. F. Kirby.

WOOD, J., (after stating the facts).   The court was correct in excluding the testimony of Kirby concerning his alleged transactions with Maynard, and the statements alleged to have been made by Maynard to him concerning his account.   But after excluding this testimony there was testimony making it an issue for the jury to determine whether or not the estate of Maynard was indebted to Kirby, and the amount, if any, of such indebtedness.

Wooten, who was present when the note and mortgage were executed by Kirby to Maynard, testified that he heard Maynard tell Kirby that he would give him credits later on in the fall in settlement for what was owing to him (Kirby) and directing Kirby to make up a list. This was competent testimony, and tended to show that at the time the note and mortgage were executed Maynard acknowledged that Kirby had an unsettled account against him for which Kirby was entitled to credit.   Then the testimony of other witnesses tended to prove that Kirby, as late as the spring of 1915, had furnished Maynard hay and a mule.

Even though Maynard's estate may not have been indebted to Kirby in the full amount of the account claimed by him, the above testimony tended to prove that he was indebted to him in some amount.   The peremptory instruction by the court deprived the appellant of the right to have the jury determine whether or not the Maynard estate was indebted to him in any sum.   As to whether or not the estate of Maynard was indebted to Kirby, and if so, the amount of such indebtedness, were issues, under the evidence, to be submitted to the jury under proper instructions.

The court, therefore, erred in its ruling directing the jury to return a verdict in favor of the appellee.   On appeal from a directed verdict, the evidence must be given

its strongest probative value in favor of the party against whom the verdict is directed, and if there is any evidence tending to establish an issue in his favor, the court should allow the issue to go to the jury. *Williams* v. *St. Louis & San Francisco Rd. Co.,* 103 Ark. 401; *Barrentine* v. *The Henry Wrape Co.,* 120 Ark. 206.

For the error indicated, the judgment is reversed and the cause is remanded for a new trial.